**SO ORDERED.**

**SIGNED this 13 day of October, 2021.**

*Stephani W. Humrickhouse*
_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 19-02972-5-SWH |
| JOHN LEE WILES, | CHAPTER 11 |
|     DEBTOR | |
| | |
| TONY RAY SIMMONS, JR., | |
|     Plaintiff, | ADVERSARY PROCEEDING |
| v. | NO. 19-00147-5-SWH |
| JOHN LEE WILES, | |
|     Defendant. | |

**ORDER REGARDING MOTION FOR SUMMARY JUDGMENT**

The matter before the court in this adversary proceeding is the plaintiff's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure (made applicable in bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure) on grounds that the debt owed by the debtor/defendant John Lee Wiles to plaintiff Tony Ray Simmons, Jr. should be deemed nondischargeable as a matter of law. (Dkt. 22) The defendant filed a response in opposition to the motion (Dkt. 24), and a hearing was held on September 1, 2021, in Raleigh,

North Carolina. The court took the matter under advisement and invited the parties to submit additional authority in support of their positions, which both plaintiff and defendant elected to do.

On October 7, 2021, the court entered a short order which allowed the motion in part and denied it in part, for reasons to be set forth in a supplemental opinion. (Dkt. 34) Those reasons are set forth below.

## BACKGROUND AND PROCEDURAL HISTORY

There is no dispute that in September 2009, defendant John Lee Wiles shot plaintiff Tony Ray Simmons, Jr. in the parking lot of Northern Tool in Concord, North Carolina. In 2017, Simmons filed a complaint asserting a civil claim of common law battery against Wiles in the Cabarrus County Superior Court, and a jury trial was held in December 2018. Following the presentation of the evidence, plaintiff moved for a directed verdict on his claim for common law battery, which the state court granted. Judgment and Opinion of the Court Pursuant to N.C.G.S. § 1D-50 (Dkt. 23, Ex. A) at 1 ("the Judgment"). In the Judgment, which was entered by that court on January 23, 2019, the state court acknowledged that it ordinarily would not direct a verdict in favor of a party with the burden of proof, but that granting the motion was appropriate "'where the non-movant establishes proponent's case by admitting the truth of the basic facts on which the claim of proponent rests'" or "'where there are only latent doubts as to the credibility of oral testimony and the opposing party has failed to point to specific areas of impeachment and contradictions.'" *Id.* (internal citation omitted). Here, the court noted, there was "no genuine dispute at trial that Defendant shot the Plaintiff and that Plaintiff sustained some damage or injury as a result; and further the element of non-consent was established as a matter of law." *Id.* Accordingly, the state court granted plaintiff's motion for directed verdict on the affirmative claim of common law battery.

*Id.* With respect to the four issues that were left to be put to the jury, its unanimous verdict established that 1) the defendant's commission of a battery upon plaintiff was not in self defense, or in the defense of another; 2) plaintiff was entitled to recovery for personal injury in the amount of $1 million dollars; 3) that the defendant was liable to plaintiff for punitive damages; and 4) that the jury in its discretion awarded $2 million dollars to plaintiff in punitive damages. *Id.* at 1-2.

Because the defendant made post-verdict motions for judgment notwithstanding the verdict on issues 3 and 4, those being whether, and if so to what extent, plaintiff was entitled to punitive damages, the court noted its statutory obligation to enter a written opinion stating its reasons for either upholding or disturbing the jury's findings on punitive damages. *Id*. at 2, citing N.C.G.S. § 1D-50. The standard of review applied by that court is essential to this court's disposition of the matter at hand, and is discussed *infra*, but it suffices to say for background purposes that the court upheld the jury's verdict and it remains undisturbed notwithstanding defendant's subsequent appeals.

Defendant filed a petition under chapter 11 of the Bankruptcy Code on June 28, 2019, and on October 14, 2019, plaintiff filed an amended proof of claim in the amount of $3,253,117.38. The motion for summary judgment was filed on August 7, 2021, and in it, plaintiff asserts that based upon application of the doctrine of collateral estoppel to the state court determinations by both the jury and the judge, the entire debt should be deemed nondischargeable under 11 U.S.C. § 523(a)(6) as being a debt "for willful and malicious injury by the debtor" to the plaintiff. Dkt. Nos. 22, 23. In response, defendant initially countered that plaintiff could not "satisfy the first prong of issue preclusion as neither 'willful' nor 'malicious' was actually litigated and a necessary element of either the Battery Debt or the Punitive Damages Debt." Dkt. 24 at 5. At the hearing, defendant

3

focused[1] primarily on the issue of whether the jury verdict established that the injury and related debt are from "malice." For the reasons set out below, the court concludes that the issue of willfulness was determined by the state court's entry of a directed verdict on the battery claim at the close of evidence, and that collateral estoppel does not apply with respect to the issue of malice.

## DISCUSSION

Distilled to its essence, the issue before the court turns on whether the jury verdict awarding $1 million in compensatory damages for civil battery and $2 million for punitive damages (which, under North Carolina state law, may be based upon actions that are willful or wanton *or* malicious) must be found, as a matter of law, to satisfy the nondischargeability standard of being debts for willful *and* malicious injury. Section 523(a)(6) excepts from judgment those debts that are "for willful *and* malicious injury by the debtor" to the person or property of another entity.

In plaintiff's motion for summary judgment, plaintiff bears the burden of proof and must establish an exception to discharge by the preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Farouki v. Emirates Bank Int'l., Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994). Non-dischargeability provisions are "to be interpreted narrowly." *In re Theonnes*, 536 B.R. 680, 697 (Bankr. D.S.C. 2015), *citing Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (noting the "'well-known' guide that exceptions to discharge 'should be confined to those plainly expressed'" (internal citation omitted)); *see also Thomas v. Causey (In re Causey)*, 519 B.R. 144, 154 (Bankr. M.D.N.C. 2014) ("If this Court were to interpret Section 523(a) as allowing equitable exceptions to discharge under general common law principles, such a holding would impermissibly widen the scope of these

---

[1] Counsel for defendant acknowledged during the course of the hearing that the court had been presented with the necessary evidence and legal argument to resolve the question of willfulness.

4

provisions of the Code and, in effect, swallow-up or render superfluous those exceptions enumerated in Section 523(a).").

At issue is whether the doctrine of collateral estoppel, also known as issue preclusion, applies to the directed verdict, jury verdict, and the state court judgment and opinion[2] issued in the underlying litigation to preclude further litigation of whether the resulting debt rests upon a previous determination that defendant inflicted an injury upon plaintiff that was both willful *and* malicious, as is necessary for the debt to be nondischargeable as a matter of law. In North Carolina, for collateral estoppel to apply in this matter, plaintiff must show that the issue in question is "'identical to an issue actually litigated and necessary to the judgment, that the prior action resulted in a final judgment on the merits, and that the present parties are the same as, or in privity with, the parties to the earlier action." *Sartin v. Macik*, 535 F.3d 284, 289 (4th Cir. 2008) (emphasis added). More comprehensively, the issues must be the same as those involved in the prior action, must have been "raised and actually litigated" in that action, and must have been "material and relevant to the disposition of the prior action." *Id., quoting State v. Summers*, 528 S.E.2d 17, 20 (N.C. 2000); *see also Musselwhite v. Mid-Atlantic Rest. Corp.*, 809 Fed. Appx. 122, 127-28 (4th Cir. 2020); *Sykes v. Blue Cross & Blue Shield of N.C.*, 828 S.E.2d 489, 494 (N.C. 2019); *Thomas M. McInnis & Assocs., Inc. v. Hall,* 349 S.E.2d 552, 557 (N.C. 1986). Here, the question is whether the "willful"

---

[2] In addition to the Judgment, which was entered on January 23, 2019, the state court also entered an order captioned "Order on Defendant's Motions for Judgment Notwithstanding the Verdict and New Trial and Restated Opinion of the Court Pursuant to N.C.G.S. § 1D-50," which was filed on April 22, 2019. Dkt. 23, Ex. C (the "Restated Opinion"). In the Restated Opinion, the court sets forth the bases on which it denied defendant's motion for a new trial, addresses other issues raised by defendant, and restates its original opinion.

and "malicious" aspects of injury to plaintiff were not only litigated but also "necessary to" the judgment.

The court considers that question with reference to the state court's entry of directed verdict on the civil battery claim and with the tremendous benefit of having the state court's thorough review of the bases upon which the jury's verdict could have been supported. As to the jury issues of self-defense, compensatory damages, and punitive damages, this court is bound by the *jury's* verdict and necessarily underlying findings of fact, and not the state court judge's analysis or summary of the evidence, however detailed and thoughtful that summary may be. Accordingly, before turning to the specifics of whether the directed verdict and/or the jury's verdict established the willful and/or malicious nature of the injury to plaintiff such that the debt is nondischargeable, this court looks to the Judgment issued by the state court, in which it articulated the bases for its directed verdict and, as to the jury's punitive damages award, clarified precisely what that review was – and was not – intended to do. In announcing its standard of review, the state court explained:

> At the outset, the Court notes that what follows is the opinion of the Court on *the existence and sufficiency of evidence* regarding *the Jury's* decision on Defendant's liability for punitive damages and *the Jury's* decision to award punitive damages and the amount thereof. *See Scarborough v. Dillards, Inc.*, 363 N.C. 715, 722-23, 693 S.E.2d 640, 644-45 (2009), *cert. denied*, 563 U.S. 988, 131 S. Ct. 2456, 179 L. Ed. 2d 1211 (2011); *Hayes v. Waltz*, 246 N.C. App. 438, 784 S.E.2d 608 (2016). What follows *is not* the court's opinion of the truth or falsity of the evidence or the court's opinion of the weight of the evidence. *Id*.
>
> The standard of review applied by the Court is two-fold.
>
> First, as to whether to uphold or disturb the finding by the jury as to the Defendant's liability for punitive damages, the standard of review applied by the Court is (1) whether Plaintiff produced clear and convincing evidence from which the jury reasonably could find one or more of the statutory aggravating factors required by N.C.G.S. § 1D-15(a), *Id*.; and (2) whether the Plaintiff produced more than a scintilla of evidence that the aggravating factor(s) so proven (by clear and convincing

> evidence) was/were related to the injury to the Plaintiff, and that the Defendant participated in the conduct constituting the aggravating factor(s) so proven. *See id.*
>
> Second, as to whether to uphold or disturb the jury's decision to award punitive damages and the amount of that award, the standard of review is whether the jury abused its discretion in making the award, and in the amount of that award. (Citation omitted)
>
> For the forgoing reasons, the Court upholds the Jury's answers to the third and fourth issues and leaves the Jury's verdict on the same undisturbed.

Judgment at 3 (emphasis in original) (set out at Dkt. 23, Ex. A at 14). That court went on to address, with specificity, the evidence bearing on plaintiff's liability for and the amount of punitive damages. *See* N.C.G.S. § 1D-50. The complicating factor here is that unlike this court's review of a state court's written decision setting out its *own* findings, here, with respect to the punitive damages, the state court reviewed and articulated the bases on which the *jury*, based on the evidence presented, *could* have reached its verdict and awarded those damages. In other words, the state court approached that review from a decisional and statutory remove, and this court is distanced one step further. With those limitations acknowledged, the court turns to the matter at hand.

**I.     Directed Verdict Necessarily Establishes the Debts are for Willful Injury**

There is no remaining material factual dispute before the court as to whether the injury inflicted by Wiles upon Simmons was intentional. The standard pattern jury instruction for civil battery require that a plaintiff "prove, by the greater weight of evidence, three things," which are:

> First, that the defendant intentionally caused bodily contact with the plaintiff[;]
>
> Second, that such bodily contact ... [caused physical pain or injury][;]
>
> And Third, that such bodily contact occurred without the plaintiff's consent.

N.C.P.I. § 800.51. The trial court entered the directed verdict on this claim, and the inquiry now is whether the that court's determination that a civil battery occurred as a matter of law and the jury's

7

award of compensatory damages rest upon and thus establish, for purposes of nondischargeability, that the injury to plaintiff was intentional and willful within the meaning of § 523(a)(6).

After full review of the parties' filings and arguments, this court can readily conclude that the directed verdict, and the jury's award of compensatory damages, establishe that defendant's debt to plaintiff is based upon a willful injury to plaintiff as that term is used in both N.C. Gen. Stat. § 1D-15(a)(3) and 11 U.S.C. § 523(a)(6). *See Kawaahua*, 523 U.S. at 61 ("The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."). The *Kawaauha* Court's holding turns on the distinctions arising in "a wide range of situations in which an act is intentional, but injury is unintended, *i.e.*, neither desired nor in fact anticipated by the debtor." *Kawaauha*, 523 U.S. at 62. As that Court explained: "Every traffic accident stemming from an initial intentional act–for example, intentionally rotating the wheel of an automobile to make a left-hand turn without first checking oncoming traffic–could fit the description." *Id*. at 62. As noted earlier, a common law battery claim under North Carolina law requires intent to cause bodily contact, but *does not require an intent to cause physical pain or injury as a result of that contact*, meaning a battery claim could be brought for pranks gone awry (such as pushing someone into a swimming pool, resulting in unintended pain and injury), so long as the contact was intentional, and the injured party did not consent to that contact. *See* N.C.P.I. § 800.51.

Here, the very nature of defendant's conduct – the intentional discharge of a firearm directed toward the body of another, as opposed to some more innocuous conduct – compels the conclusion that the injury was intended, and thus willful. The defendant did not discharge his weapon into the air; the firearm did not discharge during a struggle. There is no dispute whatsoever that defendant

intentionally shot plaintiff in the abdomen, and defendant's intentional discharge of a firearm into plaintiff's body constitutes an intent to injure plaintiff. For the foregoing reasons, and as stated in this court's order of October 7, 2021, the court will apply the doctrine of collateral estoppel with respect to the state court's directed verdict on the claim of common law battery coupled with this court's determination that defendant necessarily intended the injurious consequences of the act of shooting plaintiff by virtue of the undisputed evidence of the nature of the battery. This determination is further buttressed by defendant's counsel's acknowledgment that such a finding would be appropriate, and the court notes that in defendant's appeal of the state court's judgment, the appellate court upheld the directed verdict in this case where there was "uncontroverted evidence from Defendant's own sworn testimony on direct examination that Defendant *intended bodily contact to occur*." *Simmons v. Wiles*, 845 S.E.2d 112, 116 (N.C. App 2020) (emphasis added). An intentional bodily contact with a bullet is an intent to injure. The issue of whether the injury inflicted upon plaintiff by defendant was willful within the meaning of § 523(a)(6) has been determined.

**II.     Jury's Verdict Does Not Necessarily Establish that Debt is for Malicious Injury**

Plaintiff argues that the jury's award of punitive damages, which was upheld and discussed in thorough detail by the state court judge, necessarily also determined that the debt is for an injury that was both willful *and malicious*. If so, then that factual and legal finding would have preclusive effect before this court. If not, it would remain for plaintiff to prove, in a trial before this court, facts sufficient to establish the "malicious" element with respect to his injuries and the resulting debt.

In support of his motion, plaintiff argued at the hearing that not only is the willful aspect of the injury clear, given that the injury resulted from an intentional shooting, but there also is no

9

possible "benign" reason for the shooting. According to plaintiff, because the jury reached a verdict of "No" on the question of whether the shooting was in self defense or the defense of another, a conclusion that the shooting was malicious is essentially inescapable. Plaintiff maintains that these findings "establish that Defendant's action was willful *and malicious*, and thus his debt to Mr. Simmons is nondischargeable under § 523(a)(6)." Dkt. 23 at 3-4 (emphasis added). Put more plainly still, plaintiff extrapolates that by virtue of having excluded any *acceptable* reason for the shooting and resulting injury, that lack of justification is the "equivalent" of malice: "The issue of whether Defendant was justified in shooting Mr. Simmons *is the same issue as whether he shot Mr. Simmons with malice*." *Id.* at 9 (emphasis added).

Defendant counters that the jury instructions themselves provided that the jury could award punitive damages if they found that *one* of the three aggravating factors were present and related to the injury for which compensatory damages were awarded. For that reason alone, defendant argues, given that this court cannot determine with any certainty whether the jury based the punitive damages award in whole or in part on any "malice" in defendant's underlying conduct, there is no basis upon which collateral estoppel could apply. Dkt. 24 at 10. Defendant argues further that whether the shooting was a matter of defense of self or another is an affirmative defense to the common law battery claim, such that his failure to establish that defense, in that context, cannot properly be equated to the plaintiff establishing malice.

After full review and with regard to whether the verdict awarding compensatory and punitive damages necessarily establishes that the debt or any part of it is for an injury that the jury found to be "malicious," the court concludes that it does not. Returning to the elements of civil common law battery, as just discussed, it is undisputed that malice is not an essential element of such a claim.

10

The state court judge, in entering a directed verdict on this specific claim, would by definition have no basis upon which to assess whether the evidence as presented had established that defendant acted with malice in inflicting an injury upon plaintiff. Intending an injury, as discussed above, does not supply the answer as to "why?" A determination of malice involves the reasons for the conduct.

It also is undisputed that the jury awarded substantial punitive damages, which the state court declined to disturb on grounds that the damages were reasonable and supported by the evidence. Such an award must comport with the standard for recovery of punitive damages as set forth in N.C.G.S. § 1D-15(a), which provides:

> (a) Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that *one* of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded:
> (1) Fraud.
> (2) Malice.
> (3) Willful or wanton conduct.
> (b) The claimant must prove the existence of an aggravating factor by clear and convincing evidence.

N.C.G.S. § 1D-15(a) (emphasis added). Here, obviously, is the classic "and" versus "or" problem. The jury could have based its award of punitive damages on any of three alternatives, and need not have found all of them. If the jury's award was not conclusively based on malice, then collateral estoppel does not apply.

Turning to the specifics of the jury's award, there is no dispute that the jury's verdict sheet awarding punitive damages does not identify the aggravating factor, or factors, on which it based the award. *See In re Cobham*, 528 B.R. 283, 289 n.2 (Bankr. E.D.N.C. 2015) (discussing inapplicability of collateral estoppel when multiple possible grounds for decision preclude a determination of which issue or issues have been decided), *aff'd on other grounds*, 551 B.R. 181

(E.D.N.C. 2016), *aff'd*, 669 F. App'x 171 (4th Cir. 2016). The state court's opinion makes perfectly clear that there was clear and convincing evidence on which the jury *could* have determined that defendant acted with malice, and also that there was clear and convincing evidence from which the jury *could* have determined that defendant's commission of a battery upon plaintiff was willful *or* wanton. Dkt. 23 at 17-18. "Could have" is no equivalent of "did."

The court also agrees with defendant that the jury's rejection of defendant's self-defense argument simply cannot be equated to a determination that defendant acted with malice, and it seems to the court that plaintiff erroneously conflates the two. Plaintiff's argument is both overly simplistic, in insisting that "if it's not this, then it must be that," and overly broad, in asking this court to reach a specific determination that the state court itself could not, and did not, make.

The state court also reviewed an additional aggravating factor that the jury could have considered in setting the amount of punitive damages, which was the fifth factor: whether defendant "concealed the truth of the shooting with the story of the assault by Plaintiff in an effort to avoid responsibility for his egregiously wrongful conduct." *Id.* at 20 (addressing statutory requirement that in setting amount of punitive damages, a jury may consider only evidence related to factors listed in N.C.G.S. § 1D-35(2)). As to that factor, the state court made the following observation:

> [R]egarding the statutory factors eluded to above, 1-4 relate directly to the wrongful conduct of the Defendant's commission of a battery on the Plaintiff, Defendant's state of mind, knowledge and awareness, and the harm that resulted from the wrong. The fifth factor, however, deals with a separate and distinct wrong, which is nevertheless related to the original wrong. Therefore, the jury did not abuse its discretion in awarding two time the amount of actual damages for punitive damages. *The jury could have reasonably found that it was appropriate to award 1 million in punitive damages for the egregiously wrongful act of shooting the Plaintiff in the first place, and an additional 1 million for the additional wrong of concealment. Whether this was in fact of the reasoning of the jury is not known to the Court. But whatever the reasoning was*, it was not an abuse of the Jury's discretion.

Judgment (Dkt. 23) at 20 (emphasis added). Again, and as reviewed at the outset of this order, the state court took great care to not overstep the bounds of its statutory and limited obligation, which was to assess whether the jury's verdict was appropriately supported by the evidence and to then set forth "the opinion of the Court on *the existence and sufficiency of evidence* regarding *the Jury's* decision on Defendant's liability for punitive damages and *the Jury's* decision to award punitive damages and the amount thereof." *Id*. at 14. On appeal of the underlying Judgment and the Restated Opinion, the appellate court affirmed, concluding that "the evidence was clear and convincing to support the jury's finding that Defendant's actions were willful and wanton *or* malicious." *Simmons*, 845 S.E.2d at 117 (emphasis added). Given that the jury could have but was not required to find satisfaction of the "malicious" element, and because there is no way this court can discern whether it did so find, the court cannot apply issue preclusion to the question of whether the injury inflicted by plaintiff upon defendant was malicious, such that the corresponding debt must be deemed nondischargeable under § 523(a)(6) as a matter of law.

In practical terms, this determination results in the need for a trial which has one focused issue, and nothing more: whether the defendant shot the plaintiff with malice. Without pre-adjudicating this question of fact, the court acknowledges that the state court's summaries of the evidence, as well as the evidentiary recitation set forth by the North Carolina Court of Appeals, are wholly consistent with and supportive of a jury determination that the defendant did so. Even so, the proper application of collateral estoppel results in that issue remaining unresolved in the context of nondischargeability prior to trial.

13

## CONCLUSION

For the foregoing reasons, plaintiff Simmons' motion for summary judgment was, by order entered on October 7, 2021, allowed in part and denied in part.

**END OF DOCUMENT**